May it please the Court, Katie Shepard for Mr. Perlaza-Ortiz. The issue in this case is whether the Texas Deadly Conduct Statute categorically qualifies as a crime of violence within the meaning of the 2015 version of the Illegal Reentry Guideline. Overbreath is not an issue in this case because this Court has previously held that the Texas Deadly Conduct Statute is overbroad. So the particular issue in this case is whether the Deadly Conduct Statute is divisible, meaning whether does it contain multiple crimes with different elements or does it set forth a single crime with various means to commit that crime. The Texas Deadly Conduct Statute permits discharging a firearm at or in the direction of one or more individuals or a habitation, building, or vehicle with recklessness as to whether that target of the shooting is occupied. In Howell, this Court said that the primary test for distinguishing between elements and means is whether the jury needs to agree as to the statutory alternatives. And if a state court decision definitively answers that question, then the inquiry goes no further. In Butler, a Texas court has answered the means or elements question because it established that the targets in the statute are means and not elements. In that case, the defendant was charged with discharging a firearm at an individual and discharging a firearm at a habitation, and the court held that the state was not required to elect between those alternative methods of committing the crime. This case is also important because it provides an example of a defendant being charged in a way that is consistent with the alternatives in the statute being means under Texas charging law. The Texas Code of Criminal Procedure requires that separate offenses be charged in separate counts of an indictment, but in Butler, the defendant was charged with separate versions of committing the offense in different paragraphs of a single count, and that is consistent under Texas charging law with those alternatives being means. In Tobar, the defendant was charged similarly with being, with discharging a firearm against an individual in one paragraph and discharging against a habitation in another paragraph, so of the same count of the indictment. And also in that case, Tobar, the court applied the sufficiency rule that the state is only required to prove one of the means that's charged. So in that case, the court only considered whether the evidence was sufficient to support the habitation charge and didn't consider the evidence as discharging the firearm against the individual. The government's cases do not support the targets being elements, and I'd like to address the address, cite five cases in their brief, and I'd like to address each of them briefly. First, the government cites Tabaka, but in that case, the court was dealing with misdemeanor Texas deadly conduct and not felony Texas deadly conduct, and because the statute sets forth different penalties for misdemeanor versus felony Texas deadly conduct, it's clear under Mathis and Apprendi that misdemeanor Texas deadly conduct is a separate crime. The government also relies on Byrd, but the court in that case merely made an offhand reference to elements based on the undisputed testimony in that case. The defendant had testified that he shot a firearm at a person who was driving a vehicle towards him, so the facts of that case supported both discharging a firearm at an individual and discharging a firearm at a vehicle, and the real issue in that case was whether the defendant was entitled to a self-defense instruction. Next, the government cites two, the Wilson and Reed cases, but both of those cases use elements in an evidentiary sense and not in a Mathis sense, and what I mean by that is that in the Mathis, the way Mathis uses elements is as the constituent parts of a crime's legal definition that a state's required to prove, and in Wilson and Reed, the court was considering the hypothetically correct jury charge, which is the statutory elements of the crime as modified by the charging instrument. So in both of those cases, the defendant was charged specifically with discharging a firearm at a habitation, and that's what the Texas courts were considering when they were judging the evidence presented at trial against the hypothetically correct jury charge. And this court in Hinkle recognized that distinction between the evidentiary notice requirements and the way that Mathis uses the term elements. In Hinkle, the government had pointed to cases where a defendant had been charged with a particular method of delivering a controlled substance and then had required the state to prove only that single method of delivery, and this court said that the government's reading of those cases confused the evidentiary notice requirements for the Mathis elements. Finally, the government relies on the Honeycutt case, and in that case, the issue was whether Texas deadly conduct was a lesser-included offense of aggravated assault, but like the sufficiency of the evidence inquiry, the lesser-included offense inquiry is tied to the elements as charged, and in that case, the defendant was charged with aggravated assault by causing bodily injury, and so the court considered the Texas deadly conduct statute only as to discharging a firearm at an individual. How much deference should we give to the Butler case, given that it's from an intermediate court of appeals, but more importantly, it's unpublished? Even though the case is unpublished and from an intermediate court of appeals, I think it does deserve this court's deference for two reasons. First of all, the court in Butler, when it issues a memorandum of opinion, it's saying that the issue of law is settled, and in Butler, the court relied on the Huffman case, which is a Texas court of criminal appeals case, and in that case, there's a lot of discussion about how a — the State doesn't violate the defendant's right to a unanimous jury if the State charges alternative methods of committing the same offense, and the Huffman court also discusses how the — under Texas law, the — whether a statute creates more than one offense is — what is the focus or gravamen of that offense, and one handy rule of thumb for figuring out what the focus of the offense is, is to look at the verb, and that's the conduct, typically, that a jury has to be unanimous on. So then applying that to the Texas deadly conduct statute, the discharging of the firearm is the verb, and that's the focus and gravamen of the offense. So because Butler was applying well-established rules of Texas law, I don't think the fact that it's unpublished should prevent this court from relying on it. And also, because of the number of cases that end in please, a single unpublished case could be indicative of many cases that have the same charging practice, and we do also rely on the Tovar case that shows a defendant being charged in the same way under Texas law. And finally, also at this court in Lobaton, recently did rely on intermediate appellate court cases when doing a Mathis inquiry in an Arkansas statute, so that would provide some precedent for having relied on intermediate appellate court cases. Assuming that this was error, is it, is there harm or is it harmless? The judge said regardless of whether these are the guidelines or not, this is the same sentence I would give either way, and so we have that statement, but is there harm or is it harmless error? The error in this case was harmful. It was definitely not harmless under this court's precedent. The district court in this case never considered the correct guidelines range without the 16-level enhancement, and so the case clearly falls under the line of cases of Martinez-Romero and Ibarra-Luna. And under those cases, it's not enough for the district court to say that he or she would have imposed the same sentence. The government also has to show that the guidelines did not influence the sentence in any way, or that the guidelines did not play any part in the sentence imposed. And in this case, the guidelines clearly played a role because the district court used the guidelines range of 46 to 57 months that included the 16-level enhancement and then departed downward one criminal history category and then imposed to that range of 41 to 51 months and then imposed a sentence precisely at the bottom of that range. And under Martinez-Romero, it's not enough that the district court then said that he would impose the same sentence because the guidelines clearly played a role. There isn't anything else in the record that explains the sentence of 41 months other than the guidelines. And also in Martinez-Romero, the district court actually said three times that it would impose the same sentence, and this court still found that the sentencing error was not harmful. It was harmless. And in this particular case, the government has the burden to show that it was harmless? That's correct. The government does have a burden that this Court has described as difficult and heavy to show that the error was harmless. And I think that heavy burden makes sense in the context of recent Supreme Court rulings that — of Molina, Martinez, and Pugh that demonstrate that the guidelines have a powerful anchoring effect. And in this case, the correct guidelines range was 18 to 24 months, and there isn't enough evidence to show that the enforcement would have upwardly varied to exactly 41 months if the Court had not had that incorrect guidelines range before it. And the government on Friday filed a 28J letter that cited some of these — some recent cases by this Court, Rico — no, sorry, Castro, Alfonso, Shepard, and Sanchez, and I'd like to address those briefly. In Shepard, I think that was — that case is basically in a posit because there the district court said that it was mooting the defendant's objection and varied downward to a sentence within the guidelines range that would apply without the 16-level enhancement, and that's definitely not what happened in this case. And in Castro-Alfonso, the district court said that it would impose the same sentence and explained that it had a transcript related to the prior conviction that showed the offense was one that involved burglary of a dwelling. And this Court said that because the district judge was firm, plain, and clear in expressing the Court's reasoning, that it would find that the error was harmless. And in this case, we do have some discussion of the underlying offense in the context of ruling on the objection, but when it came time to impose the sentence, the district court clearly calculated the guidelines with the 16-level enhancement and then said it would impose the same sentence, but didn't provide the particular kind of reasoning that was present in the Castro-Alfonso case. I think here, the judge said something about, well, he's got some old convictions, but they're serious convictions. Yes. Would that add to his statement that said, regardless of whether these are the proper guidelines or not, I'm not going to use the guidelines, I would have given the same sentence, and on top of that, he's got some bad prior convictions, even though they're old? I think the problem is that the district court wasn't that specific, and also that doesn't provide a reason besides the guidelines for why the district court chose 41 months. And when the district court was discussing the prior offense, it was in the context of defense counsel having asked for a downward departure based on the remoteness of the prior conviction, because it had happened, the conduct underlying the conviction had happened 18 years before the sentencing in this case, and the defendant had been sentenced 14 years before the sentencing in this case. So the district court was responding to that, saying, yes, it's remote, but it is a serious offense. And when the district court stated its reasoning for imposing the 41 months, it didn't say that it had to find 41 months was the right sentence based on that prior offense. So I think the record in this case shows that the guidelines did influence the sentence, and therefore, the error was not harmless. All right. Thank you, Ms. Shepard.  Thank you. Ms. Wilson? May it please the Court. Mathis did not unequivocally overrule this Court's precedence that deadly conduct under 2205B is a crime of violence. Mathis — Are you referring to Hernandez-Rodriguez primarily? Am I referring to — Are you referring to our decision in Hernandez-Rodriguez? Exactly, Your Honor. Mathis reaffirmed established principles from Taylor, Shepard, and other cases. In DeCamp, the Supreme Court stated that a statute is divisible when it lists multiple alternative elements and effectively creates different crimes. Mathis reaffirmed this principle. Indeed, the Supreme Court said it was merely adhering to the same elements-based focus that it had used over the last past 25 years. That's the same rules this Court has largely been applying. The Supreme Court wasn't announcing a new rule. Recent cases from this Court have described Mathis as providing guidance or clarifying. Regardless, for a Supreme Court decision to overrule or change the circuit's law, it has to be more than merely illuminating. It has to unequivocally overrule precedent, and that did not happen. Mathis supports this Court's decision in Hernandez-Rodriguez. State law also confirms that 2205B is an element-based. In Reed, which the Texas Criminal Court of Appeals decided in 2008, it affirmed the lower court's conclusion that the jury could not find the elements of deadly conduct beyond a reasonable doubt under 2205B2. Honeycutt went on to describe the elements of aggravated assault in conjunction with whether deadly conduct was a lesser-included offense. It determined that they were functionally the same, and it described deadly conduct elements as knowingly discharging a firearm at or in the direction of someone. Excuse me. Other cases are also cited on pages 27 through 29 of the government's brief. But importantly here, what I'd like to discuss is why the Mr. Perlazza's reliance on Butler is misplaced. The Texas rules of appellate procedure are very clear that the case carries no precedential value. The Waco court cited no authority. It was discussing a sufficiency issue. More importantly, we need to be clear. Yes, but if you look at that entire case and its analysis, it's a sufficiency challenge. Nobody was complaining about the elements or the charging or anything like that. So the fact and, more importantly, as I believe as of Friday or Saturday, no Texas court has ever cited that decision. The same is true of Tobar. It has the exact same shortcomings. It has no precedential value as an unpublished opinion. The court of appeals cited no authority, and no Texas court has cited that decision. More importantly, Tobar was decided before this court's decision in Cabrera. And Cabrera, as the Court may recall from my brief, when it reaffirmed this court's decision in Hernandez-Rodriguez. And Cabrera was decided in 2012. And while it's an unpublished decision, what's important is it upheld or reaffirmed, if you will, this Court's prior precedent in Hernandez-Rodriguez, finding that deadly conduct was a crime of violence. But what we have here are two choices, really. We can either — this Court can either find that State law definitively supports the conclusion that 22.05 is an element-based, or it can find that State law is unclear. In either case, the district court was entitled to examine the Shepard-approved documents to narrow the offense and to determine that Perlaza was convicted under B-1. And the indictment also supports this conclusion. The indictment charged only that on or about September 1, 1997, he unlawfully discharged a firearm at and in the direction of Gonzales. It says nothing about a habitation or the — anything else under B-2. And as we know from Mathis, if an indictment references only one alternative to the exclusion of others, divisibility is strongly suggested. And that's on pages 2256 through 57 of Mathis. And Mendez, this Court's decision in Mendez, also recites that. The structure of 22.05 also supports this Court's prior conclusion. Distinct conduct is separated by the disjunctive word or. In 1999, the Texas Court of Criminal Appeals invoked — and, of course, Texas Court of Criminal Appeals is the highest criminal court in Texas. It was analyzing the aggravated sexual assault statute that criminalized specific conduct of different types. Sections were just — were separated by the word or, just as they are here. And the Court said that was some indication that a provision constituted an offense. What we have here, quite simply, is not an illustrative list or an outline of multiple ways to satisfy a single element. We have a discrete section and subsections committing different offenses. And so the net result is this Court's precedents remain intact and control the disposition here. In Hernandez — Kennedy, did the Tanksley opinion change anything? How does that affect this case, if at all? I'm sorry. I didn't mean to interrupt. Tanksley, of course, had — the petition for rehearing is pending. But Tanksley is different. Tanksley, as I recall — as I believe, did not — was not challenging the statute's indivisibility on the petition for rehearing. What it — they're challenging it in relation to the controlled substance offense. But Tanksley is very different, because here what we have is that we already have this Court's precedent where the Court went through this in Hernandez-Rodriguez. If you look at the opinion in Hernandez-Rodriguez, this Court already looked at Taylor. It already looked at Shepard. And Taylor and Shepard were not changed by Mathis one bit. And the — the Court employed those element-based analysis to determine that the — that the relevant statute is a crime of violence. Now, one thing I want to point out that was a little bit different in Hernandez-Rodriguez is, quite frankly, it talks about subsections. But if you walk that back in relation to the case that the Court cited and then that case cited, it was elements — the original citing case was an element-based language. And, of course, we do have Shepard and Taylor cited in Hernandez-Rodriguez. And as I mentioned before, that was carried forward in 2012 in Cabrera. And we also have the — the Dixon opinion from this Court, in which it said a generic conviction under 2205 is not a crime of violence because B-2 is not a — B-2 is not a crime of violence. B-1 is under Hernandez, but not B-2 under Dixon or the analysis of Dixon. I just want to be clear, counsel. Are you saying that divisibility wasn't a question in Tanksley? No. I'm saying the petition for rehearing is, I believe. I'm — yeah. I believe that the petition for rehearing, they're not challenging it on that basis. But what I am saying in relation to Tanksley, which is different here, in Tanksley, you did not have the strong support from this Court's precedent that you do have here. Because in Hernandez-Rodriguez, as I just said, you have Shepard, Taylor. You have elements-based. And the conclusion, the statute is divisible. While the Court did not expressly say that in Hernandez-Rodriguez, the opinion is clear, or I believe that it's clear, that it did find the statute divisible. So where you are at the end of the day is Mathis does not change this Court's precedents, namely, Hernandez-Rodriguez and the opinions that are carried forward. But even if this Court does find that there was an error, it is harmless. In Castro-Alfonso, this Court said that it would take the district court at its word. And here, the district court's word was it wanted to be very clear if, for whatever reason, there was a problem, a miscalculation, or an inappropriate guideline determination, it definitely would impose the same sentence under 3553A. And that's on page 131 of the record. The Court was keenly aware that Perlazza was with somebody who intentionally killed somebody and shot another person. And there was also evidence in the PSR that Perlazza had also shot some — excuse me, fired some shots. And as Judge Prado pointed out, Perlazza also had prior weapon charges. And the Court, yes, it was a long time ago, and that was one of the incentives for the Court to depart downward. But the Court, Judge Hinojosa, who's pretty familiar with all these sentencing rules, again, said he wanted it to be very clear that this was the same sentence that he was using. So other than that statement by the judge, what is there in the record that would indicate that the sentence was influenced by anything other than a guidelines calculation? Well, first and foremost, you have a judge who departed downwards and then worked off — you know, then had his departure. But as I just said, in Castro, you see — I understand that. And I understand there's two ways to look at it, as opposing counsel pointed out. But, again, the Court said it wanted to be very clear if for whatever reason. And aside from him saying that, my question again is, what else is there in that record that would indicate that that sentence is not tethered to a guidelines calculation? Well, we have some facts, which I just said and which Judge Prado talked about. The factual — why he was — why he wanted to impose that sentence factually. But I understand what you're saying as well, is that he departed downwards. The guideline was X. He sentenced at the bottom of the guideline. I clearly understand that. But the fact of the matter is, we do have a judge saying this is what he would impose regardless. And if Castro Alfonso took the Court at its word, then I'm suggesting that this Court do the same here. And if you look at these cases, I was actually involved in the Martinez-Romero case. So the advice to every district judge is, whatever you do in calculating guidelines, if you say that, put this on your checklist, make this statement at the end of every sentence, and you won't ever be reversed. Well, if you look at the history of these cases, quite frankly, I think they're rather difficult. You have in Martinez-Romero a judge saying three times — I forget her exact words, but it was, I would impose the same sentence or something like that. But right before she said that, she talked about the guideline range, which was deemed incorrect. Here, the judge did remove it some. In other words, he didn't reference the guideline range immediately and then say he wanted to be very clear. I understand the sensitivity in this area. But if you also look at a lot of these cases, quite frankly, sometimes it's enough to get an affirmance, sometimes it's not. And I think a lot of these judges are trying to do the best job that they can. But if, let's say, for example, a judge — let's say the guideline range was 40 to 50. If the judge said, well, alternatively, I'm going to impose a 39-month sentence, you could easily say to me, well, 39, it's just he reduced one to save it. It's hard for — I think a district court is in a very difficult position these days trying to impose an alternative sentence. So to the extent that this Court were to find that it's not harmless, I think — I think many district court judges would welcome the opportunity for more guidance in this area, because the guidelines, of course, are to help a judge sentence a defendant and to have consistent sentencing among defendants in various situations. And so when a judge says — a judge departs downward saying that he wasn't comfortable with the original guideline range, and then sentences based on his — or, no, I shouldn't say based on his departure, but moves downward, and then says, well, I'd impose this same sentence anyway based on these facts, blah, blah, blah, then the best we can say, the government, is to say that this is — you know, the judge was doing everything he believed that he could do to impose an alternative sentence at the time. And in all fairness to the district judge, this sentence was imposed pre-Mathis. Pre-Mathis? Yes. That's correct, Your Honor. All right. Except you take the view that Mathis doesn't change anything as regards this case. To his sentence? Uh-huh. Well, I think Mathis — I think — yes. I think — well, I think Mathis doesn't change, let's say, the guideline range. Because we only get to the alternative sentence, right, if you're going to reverse, which, of course, we hope you don't, because we believe that under Mathis and based on the State law and all of, you know, the things that we just discussed and have been briefed, that Hernandez-Rodriguez should remain intact, just like it has — just like the Court has found in the Texas burglary statutes. And I realize those cases are different, just as Tanksley. I mean, a lot of these cases, right, we have to — we have to take a particular statute and look around what Texas is doing. That's what Tanks — I mean, excuse me, that's what Mathis tells us. But Mathis also tells us that we can look at the structure of the statute itself. And we have a court of criminal appeals decision saying when the statute has this — the or, when it's listed separately with the or, the Vick case tells us that that's an indication that's a separate provision. So with all these things in mind — I mean, with all these things in mind, again, the government's position is Hernandez-Rodriguez and its progeny remain intact under Mathis. Unless the Court has any other questions, I'll yield the remainder of my time. Roberts. All right. Thank you, Ms. Wilson. Ms. Shepard. A few points on rebuttal. First of all, the Court in Hernandez-Rodriguez did not decide the divisibility question. The Court jumped right to the State court conviction documents. And as opposing counsel said, the Court did not expressly consider divisibility. And in light of — So is it still good law, or can it be distinguished from Mathis? It simply did not address the divisibility question in any meaningful way. So I think when this Court does apply the divisibility analysis and looks at the Texas court cases that Mr. Peralaza-Ortiz has cited, it's clear that the statute is indivisible. And as far as the idea that Mathis hasn't overruled this Court's precedent, the Court said that it has in Tanksley. The Court also said that in Hinkle, the Court needed to apply Mathis even if it was contrary to prior precedent of this Court. And the same thing happened in Gomez-Perez. So I think that Mathis did change the law significantly in terms of the divisibility analysis. And you really, in Hernandez-Rodriguez, don't have the kind of divisibility analysis that Mathis requires. But as — but in regard to what Mathis did, as you know, our case law requires that there has to be what we have called an unequivocal intervening change in the law. So the Supreme Court has to have directly addressed the statute at issue. And that is not what Mathis did. So we would have to wait for something like that to change our law. Well, my response to that would be that this Court has already said that Mathis did enough to change this Court's precedent in Tanksley, in Hinkley, and in Gomez-Perez. So I don't think that this Court should continue to rely on its pre-Mathis precedent in Hernandez-Rodriguez that didn't address the divisibility question the way that Mathis requires. And as far as opposing counsels — Well, of course, Ms. Wilson pointed out that in 2012, the Cabrera panel reaffirmed Hernandez-Rodriguez, indicating that it had continuing viability. But Cabrera was also before Mathis had issued. And I don't know why — Right. But Mathis didn't address this particular provision. That's true. Mathis also didn't address the particular statute in Tanksley, in Hinkle, or in Gomez-Perez. And this Court still found that it was enough of a sea change in the law to require the Court to reexamine its precedents before Mathis. And as far as the opposing counsel saying that the Butler Court did not cite any authority, as I discussed in my opening, the Butler Court did cite Huffman, which said that the verb is often the gravamen of the offense, and Butler was merely applying that. And the Butler Court did specifically address this question of divisibility because the defendant had argued that the offenses of discharging a firearm at an individual and discharging a firearm at a habitation were misjoined and thus violated the defendant's right to a unanimous jury verdict. And the court in Butler said, no, it was fine that that was how it was charged. It was fine that that's how it was tried, disjunctively to the jury, because the individuals and habitation were merely alternative methods of committing a single crime. And I would also direct this Court's attention to the published Intermediate Appeals Court decision in Miles that said that the allowable unit of prosecution in a double jeopardy context is the discharge of a firearm. And so if that's the allowable unit of prosecution, it would violate double jeopardy for a defendant to be convicted of violating the statute for shooting at an individual and shooting at a habitation. And as far as harmlessness, I would point this Court again to the Ibarra-Luna decision. In that case, the district court said that the guidelines range was 12 to 18 months and actually upwardly varied to a 36-month sentence. And this Court still reversed. The correct guidelines range was 6 to 12 months. So clearly, that guidelines range on remand would be insufficient. But the Court found that there was not enough in the record to demonstrate that the guidelines, that the sentence imposed was not influenced in the guidelines. And I would say the same about this record. The district court, before imposing sentence, did calculate the guidelines range with the 16-level enhancement, said it was applying the 16-level enhancement, calculated the offense level, said what the guidelines range was, and then ultimately imposed a sentence below that guidelines. But this record shows, along with the statement of reasons, that this sentence was influenced by the guidelines range, which is how the guidelines are supposed to work. They have a powerful anchoring effect, and they're supposed to influence sentences. So for all these reasons, we would urge the Court to reverse and remand. Thank you. Thank you, Ms. Shepard. Your case is under submission. We'll next hear United States v. Garcia.